## FRASER & DILL v. CITY COUNCIL OF CHARLESTON.

### *EX PARTE* CITY COUNCIL OF CHARLESTON.

### *EX PARTE* RAVENEL & CO.

1. The decision in *Fraser & Dill* v. *City Council of Charleston*, 19 S. C., 384, stated.
2. A receiver will not be ordered to institute proceedings to test the validity of judgments which have been already finally adjudged to be valid. This case distinguished from *Ex parte Brown & Wife*, 15 S. C., 519, and 18 *Id.*, 87.
3. Claims were left open by a decree and further proof required, and no exceptions were taken, and on appeal by other parties this decree was affirmed. *Held*, that it was *res judicata* that these claims had not been then established.
4. Claims established against an estate without proper parties before the court, may be again brought in question and rejected at the instance of such parties when brought in, even though such rejection may enure to the advantage of other creditors who did not, or could not, contest these claims.
5. Decree of the Circuit Judge approving the master's report, that certain claims presented were not proved, affirmed.
6. A judgment against an executor, without collusion, is conclusive as to the validity of the claim upon which it is based, but the rank of the

claim, in the distribution of the assets, is determined by its condition at the death of testator. Where all the unpaid valid claims against testator were simple contract demands at his death, since reduced to judgment against the executor, it is not error to order the assets to be applied to them ratably.

7. Concurring finding of fact by master and Circuit Judge approved.

Before Fraser, J., Charleston, November, 1884.

For a history of this case, see the reports of the case upon previous hearings in 8 *S. C.*, 318, 344; 11 *Id.*, 486; 13 *Id.*, 533; 14 *Id.*, 214; 19 *Id.*, 384. After its last hearing in this court the City Council filed a petition praying the Circuit Court to order the receiver of the estate of Joseph Whaley to institute proceedings to test the validity of the judgments obtained by the plaintiffs in the principal case, and others.

In the principal case it was referred to T. M. Hanckel, Esq., master, to inquire and report upon the claims of the receiver of the Bank of the State of South Carolina, and leave was given to the legatees of Joseph Whaley to except to all claims against the estate not reduced to judgment. The City Council of Charleston, assignee of these legatees, accordingly excepted.

Upon the claim of Ravenel & Co., master Hanckel reported as follows:

The first claim examined under the exceptions was the claim of Ravenel & Co. against the estate of Joseph Whaley, for loans and advances made by them in the manner stated in the evidence herewith filed. From that evidence I find that the correct amount of this claim of Ravenel & Co. is ascertained to be the sum of $6,404.13, with interest from January 1, 1873; and I find that the amount so ascertained is a valid and subsisting claim of Ravenel & Co. against the estate of Joseph Whaley.

Upon the claim of Theodore D. Jervey, No. 2, the master reported as follows:

Note of William Whaley for $2,387, dated June 1, 1874, payable ten days after date to Theodore D. Jervey, Esq., or order, with interest after maturity at the rate of one and one-quarter per cent. per month, secured by an assignment to the payee of a certain "stated claim," alleged to be due to said William

Whaley by the estate of Joseph Whaley, for his commissions and for expenses of the last illness of Joseph Whaley, and for judge of probate's fees, and sundry other "items"; and a statement of said "stated claim" being annexed to said note and therewith filed with this report. There has not been submitted to me, nor can I find in the records of the case, any evidence whatever to show whether or not any commissions were ever earned by William Whaley as the executor of Joseph Whaley, or any sums of money ever advanced by him out of his individual means to pay the expenses of the last illness of Joseph Whaley, or the judge of probate's fees, or any other items legally due by this estate of Joseph Whaley, or the amounts of such advances; or that upon the accounting between the said William Whaley as executor and the said estate any balance has been found due the said William Whaley for such advances; such accounting being, of course, necessary to establish such claim. I therefore find that there is no evidence whether or not this claim of Theodore D. Jervey, No. 2, is a valid claim against the estate of Joseph Whaley.

Upon the claim of G. L. Buist, the master reported that the note was not produced, and all the other claims he reported to be based upon forged signatures of Joseph Whaley.

The Circuit decree was as follows:

The above stated case came before me at the fall term of the Court of Common Pleas for Charleston County in 1884. The matters were not heard together, but at the same sitting of the court. The first of the above stated causes comes up on a report of the master, and the second on a petition for an order instructing the receiver to adopt such proceedings as are proper and necessary to test the validity of certain claims presented in this case against the estate of the testator. The City Council of Charleston also filed exceptions to the master's report, as well as other parties to the proceedings. The purpose of the exceptions filed by the City Council is substantially the same as that sought to be obtained by the petition. The matters will therefore be considered together. The questions raised by the petition, report, and exceptions will more fully appear by reference to them.

There is no allegation of any facts which show any ground of invalidity in, or any matter of defence to, any of these claims

which have not already been considered by the court in this case, between the petitioners and the creditors, whose claims the court is now asked to order the receiver to contest. This petition refers only to certain creditors who have obtained judgments at law, because all others are now undergoing investigation in this court, according to the practice of the court in such cases, and are passed upon in said report. The claims of these judgment creditors after a long litigation have been established by the Circuit Court, and the judgment of the Circuit Court has been affirmed by the Supreme Court, and this has been done in this case, in which the petitioner and these judgment creditors are parties, and in which the contest was carried on directly between these parties, each represented by counsel.

The receiver, as I understand it, is an indifferent person, who is simply to hold the fund for the parties entitled to it, and has in himself the rights of both parties. As the representative or successor of the deposed executor, he cannot repudiate his acts, unless for fraud or collusion between the executor and the creditor, and which he may do, as for this purpose he will be invested with all the rights and equities of other creditors or legatees. As the representative of the other creditors and legatees, he ought not to be allowed to assail these judgments, because their rights have already been passed upon by the court, and the petitioner, as assignee of the legatees, does not now say anything in any manner impeaching them, more than has heretofore been said in this case. It is difficult to conceive what rights of the creditors and legatees can be vested in the receiver in this case, which are not vested in them directly, and which they have not the right and have not had the opportunity in this case to litigate. I do not, therefore, see any propriety in ordering the receiver to institute proceedings as prayed for in the petition.

It may be that these judgments are founded on instruments to which the name of the testator, Joseph Whaley, was forged by the executor, who had been deposed. The court has held that it is too late after the rendition of these judgments to raise this question. There is not a single suggestion throughout this long litigation that these creditors are not innocent of any fault in reference to them. Mere legatees are volunteers, and take by the tes-

tator's bounty, and it is presumed were in a much better position to know of the mismanagement of the estate, than the creditors whose means were used by the chosen representative of the testator, their ancestor.

The other questions in this case arise on the report of the master, filed November 18, 1884, and exceptions thereto. Whatever may have been the legal effect as amongst the creditors themselves, of certain orders which were made in the cause, before the amendments were made by which the City Council of Charleston was impleaded as assignee of two of the legatees, and from which no appeal was taken by any of the creditors, all the claims which had not been put into judgment were left open as unadjudicated by the decree of September 18, 1882, as between all parties to the action, and from so much of that decree there has been no appeal. I am inclined to the opinion that the decree was, as to those matters in which it is said to have been modified by the decree of Judge Kershaw, simply administrative and within his control. If, however, the said decree of September 18, 1882, was as to such matters judicial, the proper way to correct the subsequent ruling was by an appeal to the Supreme Court, and not by application to a Circuit Judge. In either view of the case, I will not go behind the order of Judge Kershaw.

Considering, therefore, that all the claims not in judgment were open for investigation before the master, I see no good reason why there should be any new trial before him, or by a jury, which is, in cases like this, a matter of discretion. There is really more evidence that the claim of Ravenel & Co. is founded on a contract made by Joseph Whaley himself than there is outside of the presumptions of law in favor of even those which are in judgment. There is sufficient in the evidence before the master, as to this and all other claims reported on, to justify his conclusions, and I therefore concur in them.

It is therefore ordered and adjudged, that the petition of the City Council above referred to be dismissed, the costs to be paid by the petitioner. It is further ordered, that the exceptions to the said report be overruled and the report confirmed. It is further ordered, that the receiver, T. W. Bacot, do proceed to

sell, as soon as practicable, the city four per cent. bonds in his hands, and that he apply the proceeds of sale and any other funds in his hands, after deducting his commissions as fixed by the previous orders in this case: First, to the payment of any taxes due the State; second, to the payment of the costs and disbursements of the master and other officers of the court; third, to the following claims established in this case:

\*          \*          \*          \*          \*          \*          \*

Should the funds in the hands of the receiver be insufficient to pay the above claims in full, it is ordered that the receiver do pay them *pro rata.*

From this decree, the City Council of Charleston and the creditors whose claims were rejected appealed; and E. H. Gadsden, administrator, also appealed from so much of the decree as allowed the claim of Ravenel & Co.

*Mr. George D. Bryan*, for City Council.

*Mr. W. St. J. Jervey*, for rejected claims.

*Messrs. E. McCrady, Jr., John Wingate*, and *J. E. Burke*, for judgment creditors.

*Messrs. W. H. Brawley* and *Langdon Cheves*, for Gadsden, appellant.

*Messrs. Simonton & Barker*, for Ravenel & Co.

September 9, 1885. The opinion of the court was delivered by
MR. JUSTICE McIVER. This case has been so often before this court on previous occasions that anything like a full statement of the facts is unnecessary, as they can be gathered from the report which may be found in 19 *S. C.*, 384, and from the reports of the master and the decree of the Circuit Judge in the "Case" as prepared for argument here.

The appeal on behalf of the City Council of Charleston seems to us to be an effort to reopen questions which have heretofore been finally adjudged, and therefore calls for no further discus-

sion than to show that the questions raised by the appeal have already been determined. The object of these appellants is to assail the validity of the judgments recovered by the plaintiffs and others against Wm. Whaley, as executor of Joseph Whaley, in actions at law, upon the ground that the notes upon which they were recovered did not bear the genuine signature of Joseph Whaley, but that his name was forged by the executor, Wm. Whaley. As we understand it, this was the very question determined adversely to the appellants by the decree of Judge Fraser of September 18, 1882, affirmed by this court in 19 *S. C.*, 384. The fact that in this case the appellants, by their petition, ask for an order requiring the receiver to contest the validity of these judgments, cannot alter the case. The former decision was not based upon the fact that the attack upon the judgments proceeded from the wrong source, but the question was determined upon its merits. The language of Judge Fraser—"in the absence of collusion, I must regard a judgment against an executor as conclusive against the world whenever the same matter comes in question again"—conclusively shows this; and the whole tenor of the opinion of this court affirming that decree demonstrates that this court based its decision, not upon the form of the proceeding, but upon the merits. To say the least of it, therefore, it would be entirely nugatory to grant an order authorizing or directing the receiver to litigate a question which has already been determined in this very case.

The cases of *Ex parte Brown and Wife* (15 *S. C.*, 519), and *Ex parte Layne* (18 *Id.*, 87), which have been cited to sustain the view contended for by the appellants are not applicable. In those cases, *claims which arose subsequent to the appointment of the receiver*, were in controversy, and of course, therefore, the judgments which had been recovered against the railroad company were not binding upon the receiver, while the claims in controversy here arose prior to the death of Joseph Whaley, and, of course, prior to the appointment of the receiver of his estate. The other cases cited by the appellants (with the exception of *Wilson* v. *Kelly*, 19 *S. C.*, 160, which has been sufficiently explained in the former decision refusing a motion for a rehearing of this case), relate to questions of the rank of claims

reduced to judgment against an executor or administrator in the distribution of the assets of an insolvent estate, and have no application to the question sought to be reopened by this appeal.

Our next inquiry is as to the appeal in behalf of the simple contract creditors, together with one bond creditor, the People's Bank, who had not reduced their claims to judgment, and whose claims have been rejected, either because they were forgeries, or because there was no evidence to establish them as debts of the testator. It is quite clear that the Circuit Judge in this case was right in saying that "all the claims which had not been put into judgment were left open as unadjudicated by the decree of September 18, 1882, as between all parties to the action, and from so much of that decree there has been no appeal," for in that decree the same judge, after adjudging that the judgments recovered at law were valid claims against the estate of Joseph Whaley, uses this language, manifestly referring to the claims of these appellants : "The other claims presented to the referee, G. W. Dingle, stand on a different footing, and I prefer, in the present state of the evidence, to have more light in reference to them," and he therefore ordered that all of the creditors (which, of course, included these appellants), except the judgment creditors, should be required to establish their claims within a prescribed time before the master, or be barred from any benefit or advantage of any judgment or decree in this cause. If there was any error in this, the proper time to correct it would have been by appeal from that decree ; but when there has been no such appeal and no exception constituting a basis for an appeal from the final decree in the cause, and, on the contrary, the same has been affirmed by this court, it has become at least the law of this case. So that even if there was error in that decree, as we do not think there was, it cannot now avail the appellants.

It is quite certain that a judgment rendered in a cause in the absence of necessary parties has no force or effect as against such parties. Hence, even granting that the very loose and informal proof of these claims, if, indeed, there was any proof at all, before the clerk or referee, Dingle, converted them into judgments or decrees in equity, inasmuch as all this occurred in the absence of parties whom this court has adjudged to be necessary

parties, they would have no validity as to such parties. And when these necessary parties were brought in, it was not only the right, but the duty, of the court to provide for the investigation of the validity of these claims, and if upon such investigation they have been shown to be no claims against the estate of the testator, they certainly cannot be allowed to participate in the distribution of the assets of the estate.

The fact that this may enure to the benefit of the judgment creditors who possibly may have been estopped from raising the question as to the validity of the claims of these appellants (though we do not deem it necessary to determine that question), cannot alter the case. The court certainly cannot order any of the assets of the estate paid to any one claiming to be a creditor of the estate until he has established his claim in a proper proceeding, wherein all necessary parties are before the court and are allowed an opportunity to contest such claim if they see fit to do so. Even if every one of the judgment creditors had, throughout this litigation, and even yet, consented that the claims of these appellants should be regarded as valid claims against the estate, this could not make them so as long as any other party to the cause, whether legatee, or assignee of legatees, insisted upon proper proof of such claims, as has been done in this case; and in the absence of such proof this court would be bound to reject them as invalid claims against the estate, even though the effect might be to increase the dividend which the judgment creditors would receive. These appellants have no claim, and do not pretend to have any, against the judgment creditors. Their claims are against the estate, and until they are established against the estate they are entitled to nothing. The claim of Theodore D. Jervey, No. 2, is supposed to stand upon a somewhat different footing from the other claims, which were rejected as forgeries. But we do not see that there is, practically, any difference. This claim was never established as a debt of the testator in any proceeding where all necessary parties were before the court, and therefore cannot be allowed as a claim against the estate.

The exception taken by the City Council that the Circuit Judge has ordered all the judgments to be paid ratably, if there is a deficiency of assets, without regard to rank, seems to have

been taken under a misapprehension of the facts. The master reported that all the judgments, except that in favor of Richard Lathers, which has been paid and is out of the case, were based upon simple contract debts, and all bearing the same rank would, of course, be paid ratably in case of a deficiency of assets, as directed by the decree. For while a judgment recovered against an executor is, in the absence of proof of collusion, *conclusive as to the validity of the claim* upon which it is based, as a judicial ascertainment of that fact, in a proceeding in which all proper parties are before the court, yet it has no effect in determining the *rank of such claim*, which, according to the well settled rule, must be determined by reference to the condition of the claim at the time of the death of the testator, or intestate, as the case may be. If it was then a mere simple contract claim, it still retains that rank, after it has been reduced to judgment, against the executor or administrator.

The appeal from so much of the decree as allows the claim of Ravenel & Co. seems to be based upon a question of fact, and in view of the concurring judgment of the master and the Circuit Judge, we see no ground which would warrant this court in interfering.

The judgment of this court is that the judgment of the Circuit Court be affirmed.